UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
KATHARINE LAGOR, et al.               )
                                                        )
                    Plaintiffs,           )        CIVIL ACTION No. 06-1967 (JDB)
          v.                                          )        Next Event:
                                                        )        Deadline for Discovery Requests
ELI LILLY AND COMPANY, et al.        )                April 22, 2007
                                                        )
                    Defendants.          )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFFS' MOTION TO TRANSFER
TO THE DISTRICT OF MASSACHUSETTS**

COME NOW the Plaintiffs, by and through counsel, and move pursuant to 28 U.S.C §

1404(a), that this Court transfer this action to the United States District Court for District of

Massachusetts in Boston, and as grounds therefore state:

1.        This is a product liability/personal injury case resulting from injuries sustained

by Plaintiff Katharine Lagor and minor Emily Grace Lagor stemming from uterine

abnormalities and other injuries sustained by Katharine Lagor as a result of her embryonic

exposure to Diethylstilbestrol ("DES"). From her DES exposure, Plaintiff Katharine Lagor

suffered an incompetent cervix and an inability to carry a child to full term; as a result, minor

Plaintiff Emily Grace Lagor was born seven weeks early, suffers from cerebral palsy and has

undergone five surgeries to remedy problems related to her premature birth.

2.        Plaintiff Katharine Lagor's *in utero* exposure to DES occurred in Massachusetts,

where the witnesses to her exposure reside.

3.        All known fact witnesses reside in Massachusetts or are within the subpoena

power for the District of Massachusetts. Plaintiffs and Plaintiff Katharine Lagor's mother all

live in Seekonk, Massachusetts. Plaintiff Katharine Lagor's and Plaintiff Emily Lagor's treating

physicians reside in and around Providence, Rhode Island, within the subpoena power of the District of Massachusetts.

4.      All known documents are either in the District of Massachusetts in and around Providence, Rhode Island, within the subpoena power of the District of Massachusetts.

5.      Any potentially undiscovered witnesses or documents would either be within the District of Massachusetts or in and around Providence, Rhode Island, within the subpoena power of the District of Massachusetts.

6.      This case was filed on November 17, 2006.  The scheduling order issued January 25, 2007 and discovery has just begun.  There will be minimal hardship to the parties to transfer the case.

7.      The law of Massachusetts applies to this case.  While Massachusetts, Rhode Island, and the District of Columbia all have connections to this litigation, the choice of law of each points to Massachusetts law as the determining law of the case.

8.      The District of Massachusetts has previously interpreted Massachusetts law in cases similar to the one at bar; judicial economy will be best served by sending this case to the District of Massachusetts.

9.      This cause has no significant contact with the District of Columbia beyond that the Defendants conduct or have conducted significant business here.  No known fact witnesses reside within the District of Columbia.

10.     The interests of justice would be best served in this case by having this action transferred to the United States District Court for the District of Massachusetts, as discovery efforts, convenience, and costs would be best served.

WHEREFORE, for the foregoing reasons, and for the reasons in the attached memorandum, Plaintiffs respectfully request that this Court, in accordance with 28 U.S.C § 1404(a), enter an Order transferring this matter to the United States District Court for the District of Massachusetts.

Respectfully submitted,

/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

Counsel for Plaintiffs

## LCvR 7.1(m) CERTIFICATION

Plaintiffs, through counsel, asked Defendants Eli Lilly and Company and Dart Industries, Inc. for consent to transfer.  On March 27, 2007, Defendants refused consent to transfer.

/s/ Aaron M. Levine
AARON M. LEVINE, #7864

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
KATHARINE LAGOR, et al.                )
                                       )
              Plaintiffs,              )        CIVIL ACTION No. 06-1967 (JDB)
       v.                              )        Next Event:
                                       )        Deadline for Discovery Requests
ELI LILLY AND COMPANY, et al.          )            April 22, 2007
                                       )
              Defendants.              )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO TRANSFER
TO THE DISTRICT OF MASSACHUSETTS**

**I.     INTRODUCTION**

Plaintiffs Katharine Lagor, Timothy Lagor, and Emily Grace Lagor brought this suit to recover for damages caused by Katharine Lagor's prenatal exposure to diethylstilbestrol ("DES") and the resulting premature birth of Emily Grace Lagor.  Katharine Lagor was born in Seekonk, Massachusetts, where she has lived most of her life and where she currently lives with the other Plaintiffs.  Katharine Lagor's mother also lives in Seekonk, Massachusetts.  Barbara Fahey, Katharine Lagor's mother, ingested the DES at home in Massachusetts.  See Plaintiff Katharine Lagor's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories, as App. 1.

Seekonk, Massachusetts is near the Rhode Island border, and Plaintiffs and Plaintiff Katharine Lagor's mother sought much of their relevant medical care, including the purchase of the DES in question, across the border in Rhode Island.  However, all doctors and institutions relevant to this action are within the hundred-mile subpoena power of the District of Massachusetts.  See Fed. Rule Civ. P. 4(k)(1)(B) (establishing a 100-mile "bump" for a District Court's subpoena power).

## II.     STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought.  Plaintiffs could have initially brought this suit in the District of Massachusetts.  All defendants are corporations, which are deemed to reside in any district which can exercise personal jurisdiction over them.  See 28 U.S.C. § 1391(c).  A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state.  See 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Each Defendant is subject to jurisdiction by virtue of "causing tortious injury in [the] commonwealth by an act or omission outside this commonwealth if [it] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth," see Mass. Gen. L. ch. 223A, § 3(a), (d) (amendments added for clarification).  As all Defendants are subject to jurisdiction, and therefore reside, in the District of Massachusetts, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404.  Trout Unlimited v. United States Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996).

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to

sources of proof.  Trout Unlimited, 944 F. Supp. at 16.  The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home.  Id.

Here, nearly every factor is in favor of transfer to Massachusetts.  Plaintiffs wish to change the forum.  The claim arose in Massachusetts and is governed by Massachusetts law. Almost all witnesses and evidence are more convenient to the District of Massachusetts than the District of Columbia, and Massachusetts's interest in this case is greater than the District of Columbia's.

## III.    MASSACHUSETTS IS A MORE CONVENIENT FORUM

### A.    PRIVATE INTEREST FACTORS

#### 1.    The Balance Regarding Parties' Choice of Forum Leads to the District of Massachusetts, and Massachusetts is More Convenient for the Parties

The courts "must afford some deference" to Plaintiffs' choice of forum.  Trout Unlimited, 944 F. Supp. at 17.  Here, Plaintiffs elect to transfer; the weight of this factor is therefore not in favor of maintaining the present forum.  There is, therefore, no clear balance of interests favoring maintenance of this forum for the Defendants who do not consent to transfer.

When the current forum has no meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there.  Trout Unlimited, 944 F. Supp. at 17. If the forum is not the plaintiff's home forum, and the injury occurred elsewhere, the balance of interests is in favor of transfer.  Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005).  This is a Massachusetts products liability case where no parties are residents of the District of Columbia.  The balance of interests favors transfer to a Massachusetts court.

#### 2.    Massachusetts is a More Convenient Forum for Witnesses and Sources of Proof

3

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002). In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002).

A witness's inconvenience is material when the inconvenience may make the witness unavailable to testify. Brannen, 403 F. Supp. 2d at 94. Plaintiff Katharine Lagor's mother, who resides in Seekonk, Massachusetts, is an octogenarian. It is more convenient, and more likely to elicit her testimony, if she can testify close to home. Furthermore, in considering a motion to transfer, a court must weigh not only the number of witnesses in a particular district, but the nature and quality of the witnesses' testimony as well. See Continental Bank, N.A. v. Modansky, 755 F. Supp. 812, 814 (N.D. Ill. 1991). As Barbara Fahey is the primary witness to prove exposure to DES, her convenience is important to the case, and her presence in the District of Massachusetts tips the balance of conveniences towards that district.

The fact witnesses not in Massachusetts are in and around Providence, Rhode Island, well within the subpoena power of the District of Massachusetts at Boston. When the subpoena power of a jurisdiction covers all witnesses, that jurisdiction is convenient for transfer. Abramson v. Eli Lilly and Co., Civil Action No. 03-2541 at 4 (D.D.C. Oct. 25, 2004), App. 2. The transfer of this case will make the case less burdensome for all the parties.

B.    PUBLIC INTEREST FACTORS

Both the District Court for the District of Columbia and the District of Massachusetts are busy metropolitan courts. However, when a case is in its early stages and the court has not

become familiar with the merits of the case, there is no delay associated with transfer to another district, even if that district is statistically more "crowded." See Brannen, 403 F. Supp. 2d at 95. The deadline for discovery requests has not yet occurred and the court will not hear about the merits of the case through dispositive motions until November of this year. There is no harm to judicial economy by transfer.

The District of Massachusetts is a much better forum regarding the local interest factors. One factor in favor of transfer is where there is a local public interest in the dispute. Pain v. United Technologies Corp., 637 F.2d 775, 792 (D.C. Cir. 1980). That jurisdiction is Massachusetts, where the Plaintiffs are citizens. Furthermore, "[c]ontroversies should be resolved in the locale where they arise." Trout Unlimited, 944 F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts who are familiar with the intricacies and trends of local law and practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976). A state's interest in vindicating its laws and policies in local courts can only be overridden by "a great benefit." Jackson v. Venture Dep't Stores, No. 98 C 6216, 1998 U.S. Dist. LEXIS 17508 at *9 (N.D. Ill. Nov. 3, 1998). Here, looking at all reasonable jurisdictions' choice of law, Massachusetts law would apply. Since Massachusetts law will be applied, a Massachusetts court should hear the case.

The District of Columbia would apply Massachusetts law. The District of Columbia uses a "governmental interests" analysis for choice of law in tort claims. Herbert v. District of Columbia, 808 A.2d 776, 779 (D.C. 2002). In order to determine the most interested jurisdiction, the District of Columbia weighs four factors: (a) the place of the injury, (b) the place of the conduct causing the injury; (c) the residence of the parties; and (d) the place where

the relationship is centered.  Id.  The place of injury is one of the most important factors.  808 A.2d at 780.

The injury from DES occurs "where DES was ingested."  See Thompson v. Eli Lilly and Co., Civil Action No. 03-122, at 2 (D.D.C. Jun. 27, 2003), App. 3.  Since Barbara Fahey ingested the DES at home, in Seekonk, Massachusetts, all the injuries resulting from Katharine Lagor's *in utero* exposure to DES, including Emily Lagor's birth defects, occurred in Massachusetts. Furthermore, as all Plaintiffs are residents of Massachusetts, Massachusetts has the greatest interest in determining redress for their injuries.   The District of Columbia would apply Massachusetts law.

Rhode Island, too, would apply Massachusetts law.  Rhode Island, like the District of Columbia, has adopted the Restatement (Second) of Conflict of Laws "most significant relationship" test regarding choice of law, emphasizing the place of the injury.  Brown v. Church of the Holy Name of Jesus, 252 A.2d 176, 179 (R.I. 1969).  Rhode Island choice of law holds that, "in an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship."  Najarian v. Nat'l Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001) (citing Blais v. Aetna Casualty & Surety Co., 526 A.2d 854, 856-57 [R.I. 1987]).

It is likely that Rhode Island would consider the ingestion of DES in Massachusetts the place of the occurrence of the injury.  See Taylor v. Mass. Flora Realty, Inc., 840 A.2d 1126, 1129 (R.I. 2004) (finding the place of injury in Massachusetts when the plaintiff slipped and fell on the Massachusetts side of a parking lot straddling the Rhode Island/Massachusetts border). Furthermore, even if Rhode Island considered the place of injury to be within its borders, under

Rhode Island conflicts principles, if there is a conflict between the place of the injury and the residence of the plaintiffs, the residence of the plaintiffs trumps the place of the injury. See Oyola v. Burgos, 864 A.2d 624, 628 (R.I. 2005). Rhode Island would apply Massachusetts law as well.

Massachusetts would apply its own law. Under Massachusetts choice of law, Massachusetts uses the law of the place of injury. Cohen v. McDonnell Douglas Corp., 450 N.E.2d 581, 585 (Mass. 1983) "The place where the injury occurred 'is the place where the last event necessary to make an actor liable for an alleged tort takes place.'" Id. (citing Orr v. Sasseman, 239 F.2d 182, 186 [5th Cir. 1956]). Since the last act making Defendants liable for the injuries to Plaintiffs was Barbara Fahey's ingestion of DES, which took place at her home in Massachusetts, Massachusetts law applies.

Furthermore, the District of Massachusetts is familiar with the issues presented in the present case. Courts in the District of Massachusetts have already considered whether the child of a DES-exposed mother has a cause of action for his injuries. See e.g., Selection from Motion for Summary Judgment and Minute Order Denying Summary Judgment in Maitre v. Eli Lilly and Co., Civil Action No. 05-CV-19442 (D. Mass. Aug. 8, 2006), as App. 4. Furthermore, Boston was where DES was originally promoted for use in pregnancy and the District of Massachusetts is familiar with the issues that arise in DES cases generally.

Given that all relevant jurisdictions would apply Massachusetts law, it would make more sense to have a Massachusetts court apply its own law. Transfer to the District of Massachusetts is proper.

## IV. CONCLUSION

The District of Massachusetts is a more appropriate venue for this case. It has subpoena power over witnesses and documents relevant to Plaintiff Katharine Lagor's exposure to DES

and has more experience with the governing law. Therefore, Plaintiffs request to transfer this case to the District of Massachusetts.

Respectfully submitted,

/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

Counsel for Plaintiffs

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
KATHARINE LAGOR, et al.                        )
                                                           )
                          Plaintiffs,              )            CIVIL ACTION No. 06-1967 (JDB)
            v.                                            )            Next Event:
                                                           )            Deadline for Discovery Requests
ELI LILLY AND COMPANY, et al.        )                 April 22, 2007
                                                           )
                          Defendants.             )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

AFFIDAVIT OF AARON M. LEVINE, ESQ.
REGARDING AUTHENTICATION OF DOCUMENTS

        I, Aaron M. Levine, declare under penalty of perjury that the following is true and

correct:

        1.        Attached as Appendix 1 is a true copy of Plaintiff Katharine Lagor's Answers to

Defendant Eli Lilly and Company's First Set of Interrogatories, dated February 26, 2007;

        2.        Attached as Appendix 2 is a true copy of the Memorandum Opinion in Abramson v. Eli

Lilly and Co., Civil Action No. 03-2541 (D.D.C. Oct. 25, 2004);

        3.        Attached as Appendix 3 is a true copy of the Order in Thompson v. Eli Lilly and Co.,

Civil Action No. 03-1222 (D.D.C. Jun. 27, 2003);

        4.        Attached as Appendix 4 is a true copy of selections of Eli Lilly and Company's

Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment and the

Electronic Order Denying Summary Judgment in Maitre v. Eli Lilly and Co., Civil Action No.

05-CV-19442 (D. Mass. Aug. 8, 2006).

I declare under penalty of perjury that the foregoing is true and correct.

                                                    /s/ Aaron M. Levine
                                                        Aaron M. Levine

Dated: March 27, 2007

Appendix 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHARINE LAGOR, et al.,       ]
                            ]
      Plaintiffs,            ]
                            ]
      v.                      ]      Civil Action No.: 06-cv-01967055 (JDB)
                            ]      Next Event:  D/L to Amend or Join
ELI LILLY AND CO., et al.,       ]
                            ]
      Defendants.          ]
                            ]

## PLAINTIFF KATHARINE LAGOR'S ANSWERS TO DEFENDANT
## ELI LILLY AND COMPANY'S FIRST SET OF INTERROGATORIES

1.     Please state your present name, date and place of birth, Social Security Number, and all other names you have used or been known by, including the period during which you were known by such other names.

**ANSWER:**    Name: Katharine Lagor; Date of Birth: 4/17/55; Place of Birth: Providence, Rhode Island; Social Security No.: 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; Prior Names: Katharine Fahey, birth to 1976; Katharine Witengier, 1976 - 1987; and Katharine Lagor, 1987 to present.

2.     Please state in chronological order the full address for each residence at which you have resided for a period of thirty (30) days or more, and state the date each such residency was commenced and terminated.

**ANSWER:**    a.     136 Arcade Avenue
                   Seekonk, MA 02771
                   (4/17/55 - 1959)

            b.     112 Arcade Avenue
                   Seekonk, MA 02771
                   (1959 - 1976)

            c.     Lindenwood Drive
                   Fort Worth, TX
                   (1976 - 1978)

            d.     Address unknown
                   Gladwyne, PA

(1978 - 1987)

e.    112 Arcade Avenue
      Seekonk, MA 02771
      (1987)

f.    Pleasant Street
      Rumford, RI
      (1987 - 1988)

g.    95 Newman Avenue
      Seekonk, MA 02771
      (1988 - 1996)

h.    112 Arcade Avenue
      Seekonk, MA 02771
      (1996 - Present)

3.    Please state whether you have ever been married and, if so, for each marriage identify the full name and present address of your spouse, the date and place of marriage and the date, place and manner of the termination of any such marriage, including the date, place and court where any divorce or dissolution was granted.

**ANSWER:**

a.    Current Spouse: Timothy Lagor; Address: 112 Arcade Avenue, Seekonk, MA 02771; Date and place of marriage: October 10, 1987 in Seekonk, MA.

b.    Prior Spouse: Paul Witengier; Current Address: address unknown, Philadelphia, PA; Date and Place of Marriage: September 4, 1976 in Seekonk, MA; Date, place and manner of termination: Divorced November 2, 1984 in Philadelphia, PA.

4.    Please state your educational background including colleges attended, years of such attendance and any degrees or diplomas obtained from such colleges.

**ANSWER:**

a.    College: Boston State College; Years Attended: 1973 - 1974; Degree Obtained: N/A.

b.    College: Rhode Island College; Years Attended: 1974 - 1976; Degree Obtained: N/A.

c.    College: Texas Christian University; Years Attended: 1976 - 1978; Degree Obtained: N/A.

2

d.    College: Cabrini College; Years Attended: 1979 - 1982; Degree Obtained: BA in English Communications.

5.    Please state the name and address of your present and past employers and/or any periods of self-employment, including the job title, nature of duties, length or period of employment or self-employment, average monthly earnings and reason for leaving employ of each such employer or period of self-employment.

**ANSWER:**

a.    Employer: Open MRI of New England, Inc.; Job Title: Manager of Administrative Services; Period of Employment: 6/2006 - Present; Monthly earnings: $5,000/mo.

b.    Employer: MRI of Chelmsford; Job Title: Area Center Manager ; Period of Employment: 1999 - 2006; Monthly earnings: $4,800/mo; Reason for Leaving: laid off--cutbacks;

c.    Employer: Rhode Island Mass MRI (same company as above); Job Title: Receptionist/Center Manager; Period of Employment: 1990 - 2006; Monthly earnings: $4,000/mo;

d.    Employer: Carousel of Flowers; Job Title: Designer; Period of Employment: 1987 - 1990; Monthly earnings: $840/mo; Reason for Leaving: left during pregnancy for medical reasons;

e.    Employer: Gladwyne Flowers; Job Title: Owner/Designer; Period of Employment: 1982 - 1986; Monthly earnings: $800/mo Reason for Leaving: sold business and moved to Massachusetts.

6.    Except for the present lawsuit, if you ever made any claim or filed any lawsuit for personal injury or disability, please provide details, including the approximate date each such claim or other lawsuit was filed; the nature of your claimed injury, disability or condition; the name and address of each person, firm or corporation against whom such claim or suit was made or filed; the amount received by way of settlement, payment or judgment for each such claim or suit; the approximate date, location and circumstances of the occurrence causing any injury, disease or disability for each such suit or claim; and the name and address of the court, commission or other body before which such claim or suit was filed, if any, and the number assigned to each such claim or suit.

**ANSWER:**    Plaintiff has never filed a lawsuit.

7.    Please state the name and address of each physician or other health care provider who has treated you for any reason which you do not attribute to your alleged exposure to the diethylstilbestrol (DES ) referred to in your Complaint, including the nature, date, location, of any such treatment, the name and address of each hospital, clinic or other health care facility where you were confined, treated or examined, and the dates of such confinement, treatment or examination.

**ANSWER:**    Plaintiff objects to this Interrogatory as overly broad, burdensome, irrelevant, nor will

3

child; whether the child had any birth defects or inherited diseases/disorders and, if so, the nature of each such birth defect, disease or disorder; whether each child is now deceased and, if so, the date, place, and cause of each child's death.

**ANSWER:**    Plaintiff has been pregnant once: Approximate date of conception: LMP 12/01/89;

Date of Birth: July 22, 1990; Physicians: Dr. Hawwa and Donald R. Coustan, M.D., Women &

Infants Hospital of Rhode Island, 101 Dudley Street, Providence, RI 02905; Place of Birth: Women

& Infants Hospital of Rhode Island; Name and address of child: Emily Grace Lagor, 112 Arcade

Avenue, Seekonk, MA 02771; Birth Defects: see Plaintiff Emily Lagor's Answers to Interrogatories.

11.    Please state the inclusive dates of your mother's pregnancy with you, your mother's and father's names as of your date of birth, your mother's address during her pregnancy with you, the name and address of the doctor and/or other persons who delivered you, the name and address of the hospital or other place where you were delivered, including a description of the location if not delivered in a hospital.

**ANSWER:**    Inclusive Dates of Pregnancy: approximately 8/54 - 4/17/1955; Parent's names:

Barbara and Matthew Fahey; Mother's Address: 136 Arcade Avenue, Seekonk, MA; Doctors' names

and address: Drs. John Murphy and Calvin Gordon; Providence, RI.

12.    Please list the names of all drugs and medications used by you within the last ten (10) years, including, but not limited to, antibiotics, contraceptives, tranquilizers, sleeping pills, antihypertensives, diet aids or hormones; the inclusive dates each such drug or medication was used; the purpose for which each such drug or medication was used; and the name of the physician or other health care provider, if any, who prescribed such drug or medication for your use.

**ANSWER:**    Plaintiff objects to this Interrogatory as overly broad and burdensome, nor will it lead

to the discovery of information relevant to her claim. The only relevant hormone plaintiff has been

exposed to is the DES she was exposed to in utero.

13.    Please describe with specificity the injuries, disabilities and/or conditions which you allege to have resulted from your alleged exposure to the drug identified in your Complaint, including any complaints of injury, disability, or condition which have now subsided and when you last had those complaints, and if you are claiming any aggravation of any injury, disability, or condition describe such condition, and the manner in which you claim such condition was aggravated by your alleged

5

exposure to the drug identified in the Complaint.

**ANSWER:**

a.    Short, soft, incompetent cervix.

b.    Premature delivery at 33 weeks with resultant injuries to baby including spastic diplegia cerebral palsy, heel cord lengthening, atrial septal defect, and strabismus. In addition, a cerclage and bed rest were necessary during the pregnancy.

c.    Anger and resentment that reproductive potential is damaged.

d.    Relationship with spouse complicated by anger, resentment, and disappointment.

e.    Depression.

f.    Relationship with parents complicated by feelings of guilt and empathy.

Plaintiff reserves the right to supplement this Answer as discovery progresses.

14.    If you have been confined, examined, x-rayed or treated in any hospital or clinic or physician's office or have consulted any physician or other health care provider as a result of any injury, disability, or condition which you allege to have resulted from your alleged exposure to the drug identified in your Complaint, please state the name and address of each such hospital or clinic or office, the name and address of each treating physician or other health care provider, and the nature of the treatment received by you, including the date of each such confinement, examination, x-ray or treatment.

**ANSWER:**    Plaintiff was hospitalized at Women & Infants Hospital of Rhode Island during her

pregnancy in 1990 and at Miriam Hospital for chest pains in 2003.

15.    Please itemize any and all special damages you claim to have incurred as a result of your alleged exposure to the drug identified in your Complaint, including but not limited to, doctor and hospital bills, prescription bills, counseling services, nursing services, and other employed help, including the name and address of the person or company performing the service, the amount of each bill and the nature of the services rendered.

**ANSWER:**    Plaintiff's Special Damages will be produced upon receipt and compilation.

16.    If you are claiming any loss of income or earnings as a result of any injuries, disabilities or conditions attributed to your alleged exposure to the drug identified in your Complaint, please state the total amount claimed, the dates of employment missed and the reasons therefore; and for the last

6

5 years in which you filed federal income tax returns, state as to each return filed, your name as it appeared on the federal return, whether the return was a joint return, and the name of your spouse as it appeared on the return if a joint return was filed, and your address as it appeared on the return.

**ANSWER:**    Plaintiff may supplement this response.

17.    As to your mother, please state her current full name, maiden name, and any other names used; her date and place of birth; her present address if living, the date and cause of death if deceased; all residences at which your mother lived for a period of more than thirty (30) days since her pregnancy with you was diagnosed; any and all major illnesses, diseases and/or conditions your mother has or has had and the approximate dates of such illness, disease and/or condition; the approximate date of each of your mother's pregnancies; the outcome of each of your mother's pregnancies; what drugs, including diethylstilbestrol (DES), were administered in each of your mother's pregnancies; any medical problems developed during your mother's pregnancies; the name and address of each physician or other health care provider your mother consulted during each pregnancy; the name and address of the hospital or clinic where your mother was confined during each such pregnancy; your mother's present marital status and, if married, the name and address of her spouse.

**ANSWER:**    Mother's name: Barbara (Sykes) Fahey; Date and place of birth: 6/17/21, Seekonk,

MA; Present Address: 112 Arcade Avenue, Seekonk, MA 02771; Prior addresses:

    a.    136 Arcade Avenue
          Seekonk, MA 02771
          (1954 - 1959)

    b.    112 Arcade Avenue
          Seekonk, MA 02771
          (1959 - Present)

Mother's major illnesses:    Appendectomy, cholecystectomy, TIA

Plaintiff's mother has been pregnant five times as follows:

a.    Miscarriage in 1948.

b.    Miscarriage in 1949 or 1950.

c.    Live birth of male on September 1, 1952, in Providence, Rhode Island; Plaintiff's mother's physician was Dr. Murphy; Plaintiff's mother was prescribed DES.

d.    Live birth of male in 1954, but he only lived for 24 hours. Dr. Gordon was Plaintiff's

7

mother's physician.

e.    See Plaintiff's Answer to Interrogatory No. 11.

f.    Live birth of female on October 8, 1956, in Providence, Rhode Island; Plaintiff's mother's physician was Dr. Gordon; Plaintiff's mother was prescribed DES.

g.    Miscarriage in 1957.

Marital Status: Widow.

18.    As to your father, please state his full name; his place and date of birth; his present address if living, the date and cause of death if deceased; all residences at which your father lived for a period of more than thirty (30) days since the date of your birth; all major illnesses, diseases and/or conditions which your father has or has had and the approximate dates of such illness, disease and/or condition; his present marital status and, if married, the name and address of his spouse.

**ANSWER:**    Father's name: Matthew Fahey; Date and Place of Birth: October 27, 1926 in

Harrison, NY; Date and cause of Death: January 14, 2007 due to heart attack; Prior Residences: See

Plaintiff's Answer to Interrogatory No. 17; Major Illnesses: COPD.

19.    As to your brothers and sisters, please state their names at birth, their present names if different from their names at birth and any other names used; their present addresses if living, the date and cause of their deaths if deceased; all major illnesses, diseases and/or conditions which each has or has had and the dates of each such illness, disease and/or condition; the date of each of their births and their relationship to you (natural brother, step-sister, adopted, etc.).

**ANSWER:**    Plaintiff has two siblings:

a.    Name: Matthew Fahey; Address: 70 Pleasant Street, Rehoboth, MA 02769; Major Illnesses: None; Date of Birth: September 1, 1952.

b.    Name: Marjorie Fahey; Present name: Marjorie Dias; Address: 20 Kenton Avenue, East Providence, RI 02916; Major Illnesses: None; Date of Birth: October 8, 1956.

20.    As to your allegation that your mother ingested diethylstilbestrol (DES) during her pregnancy with you, and that such diethylstilbestrol (DES) was manufactured by Lilly, please state all dates when diethylstilbestrol (DES) was prescribed for your mother, the names and addresses of each physician who prescribed diethylstilbestrol (DES) for your mother, the names and addresses of all pharmacies, physician's offices, hospitals, clinics or other places at which your mother obtained diethylstilbestrol (DES) or it was obtained for her, the name and address of each person known to

8

you or your representatives who has knowledge of facts which support such allegations and please identify each fact and each document which support such allegations.

**ANSWER:**

a.    Dates when DES was prescribed: as soon as she knew she was pregnant through the end of the pregnancy.

b.    Drs. Calvin Gordon and John Murphy, Providence, RI.

c.    Plaintiff's mother filled her DES prescription at Rumford Rexall Pharmacy in Rumford, RI.

d.    Plaintiff's parents have knowledge regarding this information. In addition, Plaintiff reserves the right to supplement this response.

21.    Describe in detail the physical appearance of the diethylstilbestrol you allege your mother ingested, including its form (for example, pill, injection, capsule), the shape, color, or size of any pill, tablet or capsule, the dosage of the DES your mother took, the number of times it was taken per day, and any markings that may have appeared on the product.

**ANSWER:**    Plaintiff's mother recalls that the DES was a white, round, cross-scored pill without

any other markings or writing on it.

22.    Please state the date on which you first believed that your mother took DES during her pregnancy with you, the date you first discovered any injury you claim to be due to your exposure to DES, and the date you first believed that DES manufacturers in general or any DES manufacturer in particular acted in any way wrongly, negligently, or tortuously in the manufacture or distribution of DES or in the warning about the use of DES.

**ANSWER:**

a.    Plaintiff first learned she was exposed to DES when she was a teenager.

b.    Plaintiff first learned of her DES-related injury during her pregnancy with Emily.

c.    2006 was when Plaintiff first believed that DES manufactures acted in any way wrongly, negligently, or tortuously in the manufacture or distribution of DES or in the warning about the use of DES.

23.    For each document, letter, written statement, memorandum or other written material from Lilly that you, your attorneys or other representatives may have, please state the exact description of each such item, the date appearing on each such item, the location where each such item was

9

obtained, the name and address of the person to whom such written material was directed, the name and address of the person who obtained each such item, the name and address of the person who provided each such item and the name and address of the person known to Plaintiffs to have custody of the written material.

**ANSWER:**    My attorneys possess DES materials including labeling, A-Forms, brochures,

warnings, promotional literature, as well as state of the art literature.

24.    If you ever received, or if you have in your possession any documents, correspondence or publications from the national DESAD Project or any DES action organization please identify each such document, item of correspondence, or publication and indicate the date you received each such item and the source of each such item; and if not provided by the above-named organizations, please state the name and address of the person who gave you the item.

**ANSWER:**    Plaintiff does not possess any such documents.

25.    Please identify all other persons having personal knowledge of any of the facts bearing on your claim, and for each such person state his or her address, telephone number and relationship to you, if any.

**ANSWER:**    Plaintiff reserves the right to supplement this Answer as discovery progresses.

10

The information contained in these answers, as well as the word usage, sentence structure and opinions, are not solely that of the declarant; rather, they are product of counsel in preparation with declarant.

I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Dated: 2-26-07

Katharine Lagor, Declarant

AARON M. LEVINE & ASSOCIATES, P.A.

AARON M. LEVINE, #7864
1320 19th Street, N.W.
Suite 500
Washington, D.C. 20036
202/833-8040

Counsel for Plaintiffs

11

Appendix 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VALERIE ABRAMSON, et al.,

    Plaintiffs,

        v.                                Civil Action No. 03-2541 (JDB)

ELI LILLY AND COMPANY,

    Defendant.

## MEMORANDUM OPINION

    This in utero diethylstilbestrol (DES) exposure case brought by plaintiff Valerie Abramson and her husband Chett Abramson ("plaintiffs") against defendant Eli Lilly and Company is one of many currently pending in this Court. Following initial discovery, defendant has moved to transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of New Jersey, which defendant submits is a more convenient forum.[1] The Court agrees based on the specific facts of this case.

## FACTUAL BACKGROUND

    There is no dispute as to certain facts central to the disposition of defendant's motion. Plaintiffs reside in New Jersey, as do plaintiff Valerie Abramson's parents. Ms. Abramson's gynecologist during the relevant 1988 to 2001 period practices in New Jersey. The other relevant physicians identified by plaintiffs in interrogatory responses all practice in New Jersey and reside in New York (well within the subpoena power of the District of New Jersey pursuant to

---

[1] Briefing on the motion was completed on August 31, 2004.

-1-

Fed.R.Civ.P. 45(b)(2)). No non-party fact witness resides in the District of Columbia or is within the subpoena power of this Court. None of the events relating to plaintiffs giving rise to this specific action have any connection to the District of Columbia. As plaintiffs expressly agree, this case could have been brought in the District of New Jersey.

Plaintiffs do, however, claim some connection to the District of Columbia by virtue of defendant's lobbying and promotion efforts with the Food and Drug Administration ("FDA") relating to DES, which occurred largely in the District of Columbia, although for the most part long ago. Plaintiffs also point out that defendant has itself brought suit in the District of Columbia against its insurers over DES claims. Moreover, plaintiffs observe that many DES cases have been brought here, and that the judges of this Court, and particularly Magistrate Judge Kay, have developed an expertise in these cases.

## ANALYSIS

Most of the judges of this Court, including this judge,[2] have denied similar transfer motions in DES cases against Eli Lilly. Where there is no connection to this forum and a strong connection to one other forum, however, transfer has been granted. See Thompson v. Eli Lilly and Co., Civil Action No. 03-0122 (RBW) (D.D.C. June 27, 2003).

The Court agrees that this action could have been brought in the District of New Jersey.[3] However, plaintiffs' choice of forum is entitled to some weight, although it is given less deference when (as here) the chosen forum is not the plaintiff's home forum. See Piper Aircraft v. Reyno,

---

[2] See Roing, et al. v. Eli Lilly & Co., Civil Action No. 02-2211 (JDB) (D.D.C.) (Order dated Jan. 28, 2003).

[3] There is no doubt that the District of New Jersey would have jurisdiction over the action and that venue is proper there.

-2-

454 U.S. 235, 255-56 (1981); Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). On the other hand, defendant has engaged in some lobbying and other efforts related to DES in the District of Columbia. Moreover, it is the forum of choice for many DES cases against Eli Lilly, and even has been the forum of choice by Eli Lilly for its litigation against insurers regarding coverage for DES claims.[4] Although it does not appear likely that the District Judges of this Court have developed much real expertise in the substance of these DES cases, certainly Magistrate Judge Kay has considerable experience in the settlement context. Finally, it is undisputed that plaintiffs and defendant both have counsel (the latter in the District of Columbia) experienced in handling this type of litigation, and that those counsel have cooperated in other DES cases in the District of Columbia with respect to making witnesses and documents (including medical records) readily available. These relevant factors, taken together, do not weigh clearly in favor of transfer to the District of New Jersey.

What may be different about this case, however, is the convenience of witnesses factor under section 1404(a). Indeed, "the most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." Chung v. Chrysler Corp., 903 F. Supp. 160, 164 (D.D.C. 1996). The ease of access to sources of proof, the expenses for willing witnesses, and whether the claim arose elsewhere are all important considerations in this assessment. See Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 16 (D.D.C. 1996).

Here, all the relevant fact witnesses on exposure, injury and causation are more easily

---

[4] Eli Lilly opposed a motion to transfer in that case, defending its right to choose the District of Columbia courts against allegations that it was engaged in forum shopping. Defendant has explained, however, that the choice of forum there was based in part on the need to accommodate travelers from around the globe.

accessed in New Jersey than in the District of Columbia — plaintiffs, Ms. Abramson's parents, her gynecologist, and other treating physicians. No fact witness appears to be located in or close to the District of Columbia. The subpoena power of the New Jersey court reaches all those witnesses, while this Court's subpoena power does not.[5] The relevant medical records are also more readily obtained in New Jersey from the various physicians. Nor, quite obviously, did the claim, or any events giving rise to the claim, occur here.

Unlike many of the other DES cases, where relevant witnesses are spread around the country (even in the District of Columbia), this is a case with a single forum that is plainly most convenient for the witnesses — the District of New Jersey. Moreover, that is the forum where most of the operative facts occurred, although some also apparently occurred in other states but not in the District of Columbia.[6] It is simply beyond cavil that transfer to the District of New Jersey will be considerably more convenient (and less expensive) for the witnesses. Importantly, that will also enable the relevant witnesses to be compelled to testify because they will be within the subpoena power of that court, which is not the case were the action to remain in this Court. Finally, given the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge

---

[5] Conceivably, then, some of those witnesses could decline to appear if the case went forward to trial in this Court.

[6] The Court does not find persuasive the argument that DES-related lobbying efforts to the FDA tie this case to the District of Columbia. Documents related to those efforts have already been produced to plaintiffs' counsel. Likewise, a 1941 meeting of representatives of drug manufacturers in Washington, D.C., is too attenuated a basis for connecting this action to the District of Columbia.

-4-

Kay, with this case.[7]

Accordingly, defendant's motion to transfer this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) in the interests of justice and for the convenience of the parties and witnesses will be granted. A separate order will be issued.

/s/    John D. Bates
JOHN D. BATES
United States District Judge

Dated: October 25, 2004

---

[7] Plaintiffs emphasize the several other cases in this District in which transfer has been denied, including a case brought by Ms. Abramson's sister. The point remains, however, that section 1404(a) transfer motions are extremely fact-dependent, turning largely on the connection of the specific case to the transferee and transferor forums and the convenience and location of the relevant witnesses.

-5-

Copies to:

Patricia Martin Stanford
3609 Hendricks Avenue
Jacksonville, FL 32207
(904) 346-4215
Fax: (904) 346-4275
E-mail: pmslaw1@aol.com
*Counsel for plaintiffs*

Lawrence Hedrick Martin
FOLEY HOAG LLP
1875 K Street, NW
Suite 800
Washington, DC 20006
(202) 223-1200
Fax: (202) 785-6687
E-mail: lmartin@foleyhoag.com

James J. Dillon
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1000
Fax: (617) 832-7000
E-mail: jdillon@foleyhoag.com
*Counsel for defendant*

Appendix 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NANCY THOMPSON and )
MARK A. THOMPSON, )
)
      Plaintiffs, )
)
v. )      **Civil Action No. 03-122 (RBW)**
)
ELI LILLY AND COMPANY, )
)
      Defendant. )
)

## ORDER

The plaintiffs, Nancy and Mark Thompson, have brought this product liability
action against the defendant, Eli Lilly and Company, for injuries that Mrs. Thompson
alleges she suffered as a result of her mother's use of diethylstilbestrol ("DES") during
her mother's pregnancy with Mrs. Thompson. The defendant seeks to have this case
transferred to the District of Massachusetts "[b]ecause it would be more convenient for
the parties to litigate this action in the District of Massachusetts -- where the alleged
exposure in utero to (DES) took place, where almost all of the fact witnesses reside -- and
because there is absolutely no connection between the District of Columbia and
plaintiffs' claims. Motion of Defendant Eli Lilly and Company to Transfer Action,
Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to
Transfer ("Def.'s Mem. ) at 2-3. Upon consideration of the parties' submissions and for
the reasons set forth below, the Court will transfer this case to the District of
Massachusetts.

1

28 U.S.C. § 1404(a) (2000) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.    A district court is given broad discretion when considering whether to grant or deny a motion to transfer, which entails first determining whether the action could have been brought in the proposed transferee district and, if so, examining several private and public interest factors.    While deference is typically given to a plaintiff's choice of forum and the moving party "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted[,] Gemological Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001), courts recognize that less deference is given when the chosen forum is not the plaintiff's home forum, Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001).  With these considerations in mind, the Court will first examine whether this case could have been brought in the District of Massachusetts.

### (A)    Could This Action Have Been Brought in the District of Massachusetts?

Before a case may be transferred to another judicial district, a court must determine whether the transferee district is a proper venue and can exercise personal jurisdiction.  Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred... In this case, it is undisputed that this action could have been brought in Massachusetts.  This is because the alleged events that gave rise to the plaintiffs' claims occurred there, as Mrs. Thompson's mother received and ingested the DES in Massachusetts.  Def.'s Mem. at 1.  And, pursuant to Massachusetts' long-arm statute, it is also undisputed that a federal court in Massachusetts would be able to exercise personal jurisdiction over the defendant,

2

as Eli Lilly acknowledges that it had sufficient contacts with Massachusetts through its

sales of DES in that jurisdiction. Id. at 3.  (citing Mass. Gen. Laws ch. 223A, § 3

(Massachusetts long-arm statute governing torts allegedly committed in Massachusetts)).

Having concluded that this action could have been brought in Massachusetts, the Court

will now evaluate whether the private and public interest factors favor the transfer of this

action.

**(B)      Do the Interests of the Parties and the Public Favor of Transferring this Case
to the District of Massachusetts?**

In considering a motion to transfer, a Court must examine several factors, such as:

"[t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources

of proof; availability of compulsory processes to compel the attendance of unwilling

witnesses; the amount of expense for the willing witnesses; the relative congestion of the

calendars of potential transferor and transferee courts; and other practical aspects of

expeditiously and conveniently conducting a trial.   Boers, 133 F. Supp. 2d at 65 (D.D.C.

2001) (citation omitted).

Upon evaluating these factors, it is abundantly clear that this case should be

transferred to the District of Massachusetts. Massachusetts is the situs where the DES

was ingested and therefore the location where any injury resulting from its use occurred.

Nearly all of the fact witnesses reside in Massachusetts, including the plaintiffs, Mrs.

Thompson's mother, all of the physicians who have treated Mrs. Thompson for the injury

she allegedly sustained, and Mrs. Thompson's primary care physicians.  Def.'s Mem. at

1-2.  Furthermore, the ability to access much of the physical proof with the least effort

favors transfer to Massachusetts, as that is where Mrs. Thompson and her mother's

3

medical records are located. And, the pharmacies that sold Mrs. Thompson's mother the

DES are also located there.[1]

In addition, because the majority, if not all of the witnesses reside in

Massachusetts, any concerns regarding the availability of compulsory process and the

expense of securing the presence of the witnesses also favor transfer to Massachusetts.

While the plaintiffs focus on the relative congestion of the two courts' calendars as

grounds for the case not being transferred,[2] the Court notes that this case is at an early

stage of the litigation[3] and this Court's calendar is actually quite congested.[4]

Other relevant factors also weigh in favor of transferring this case to

Massachusetts. Not only do the local interests in this matter strongly favor transferring

---

[1] Defendant notes that the three major issues in DES cases are: the questions of exposure, product identification, and the nature and extent of Mrs. Thompson's alleged injuries. Regarding exposure, defendant anticipates the need to obtain relevant medical records and to depose the physicians that are still alive who treated plaintiff's mother during her pregnancy. Def.'s Mem. at 5. As for product identification, defendant maintains it will need to depose the dispensing pharmacist or other pharmacy employees regarding the disposing practices of the pharmacy or pharmacies in question. Id. Finally, regarding Mrs. Thompson's injuries, defendant contends that proof of the alleged injuries will come to the fact-finder in the form of medical records located in Massachusetts and from the testimony of Mrs. Thompson's and her mother's physicians. Three of the seven physicians identified by the plaintiffs who treated Mrs. Thomson are still living and believed to currently practice in Massachusetts. Id. at 6. In addition, most, if not all of the other witnesses and non-witness evidence are also located in Massachusetts.

[2] Plaintiffs' counsel seeks to make a comparison between the efficiency and speed of this Court and the District of Massachusetts in resolving DES cases. The basis offered for this comparison is two DES cases originally filed in this Court on October 7, 2002. Compare Christine Poti et ux v. Eli Lilly and Company, Civ.A. No. 02-1977, with Hilary Blank et ux v. Eli Lilly and Company, Civ.A. No. 02-1976. In the first case a motion to transfer the case to Massachusetts was granted on November 22, 2002, and according to the plaintiffs, no action has yet been taken by the Massachusetts district court. And, in an effort to make a comparison between the two jurisdictions, the plaintiffs assert that in the second case a settlement conference has been scheduled for August 5, 2003, before another member of this Court.

[3] This case is currently in the early stages of litigation as the close of discovery is not scheduled to occur until October 15, 2003.

[4] Neither party disputes that the assigned judicial settlement officer, Magistrate Judge Kay, has experience settling DES cases, which admittedly could contribute to the expeditious resolution of this action. However, the District of Massachusetts has been exposed to substantial DES litigation as well, see, e.g., Payton v. Abbott Labs., 100 F.R.D. 336 (D. Mass. 1983), and has had at least five DES cases transferred to it from this district in the last year and a half. Defendant's Reply in Support of its Motion to Transfer ("Def.'s Reply ) at 4. Therefore, the plaintiffs have failed to demonstrate that calender congestion in the District of Massachusetts would unduly delay the resolution of this case or that this court is better equipped to ensure the timely processing of a DES case.

4

this case to Massachusetts, but it also appears that Massachusetts state law will govern the plaintiffs' claims.[5] And a Massachusetts court is better equipped to apply Massachusetts law, as another member of this Court has commented, the interests of justice "[a]re best served by having a case decided by the federal court in the state whose laws govern the interests at stake. Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996).

While this Court finds it significant that Massachusetts has such strong connections to this case, equally significant is that the District of Columbia has no such connection to this matter. The plaintiffs assert that there is a connection between the District of Columbia and their claims because this jurisdiction is where the original industry wide promotion of DES occurred and where defendant lobbied and applied for Food and Drug Administration approval to sell and promote DES. Plaintiffs' Opposition to Defendant's Motion to Transfer ("Pls' Opp'n ) at 4. Plaintiffs also argue that the defendant spent over $6,500,000 in 2001 on marketing and lobbying efforts in the District of Columbia and currently employs at least 58 lobbyists in this jurisdiction. Id, at 5. Plaintiffs further note that the defendant itself has selected the District of Columbia as its home forum in litigation against its insurers involving coverage of the DES claims that have been filed against it. Id. This Court is unconvinced that these contacts, which have no direct connection to this case, favor maintaining this case in the District of Columbia.

---

[5] If this case remained in the District of Columbia, Massachusetts substantive law would most likely govern this litigation. To determine what law this Court would have to apply, it must use the District of Columbia's choice of law analysis. See Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129 F.3d 143, 148 (D.D.C. 1997). And this analysis would seemingly compel this court to apply Massachusetts law.

5

Finally, the Court notes that this case is clearly distinguishable from a recent DES case in which this Court denied transfer pursuant to 28 U.S.C. § 1404(a). In Ingram v. Eli Lilly & Co., No. Civ.A. 02-2023, 2003 U.S. Dist. LEXIS 1619, (D.D.C. January 28, 2003) (Walton, J.), the plaintiff's injuries arose in Seattle, Washington. Id. at *5. However, the plaintiff's mother lived in Oklahoma; the prescribing obstetrician was located in California; plaintiff's expert witnesses resided in Texas, Arkansas, Pennsylvania and Alabama; and none of the expert witnesses that the defendant customarily used were located in the State of Washington State. Id. Thus, although the State of Washington was the location where the DES was prescribed and ingested, none of the vital witnesses remained in that jurisdiction. Id. In this case, there is no such concern over a lack of a substantial connection to one particular jurisdiction. Therefore, the plaintiffs' reliance on Ingram is misplaced.

Accordingly, it is, hereby this 27th day of June, 2003,

**ORDERED** that the defendant's motion to transfer the case is **GRANTED.** It is

**FURTHER ORDERED** that this case shall be transferred to the District of Massachusetts.

REGGIE B. WALTON
United States District Judge

6

Appendix 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JENNIFER MAITRE, Individually,
and as Mother, Guardian and Next Friend of
CHRISTIAN FRANCIS MAITRE,
A Minor,

Plaintiff,

Civil Action No. 05-CV-19442 (JLT)

v.

ELI LILLY AND COMPANY,

Defendant.

## DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Eli Lilly and Company ("Lilly") moves for summary judgment under Fed. R.

Civ. P. 56 on all claims asserted by minor plaintiff ("CM"). CM alleges that his claimed injuries

are the result of his mother's ("Mrs. Maitre") *in utero* exposure to Lilly's diethylstilbestrol.[1]

Massachusetts law, however, has not recognized, and in all likelihood, will not recognize "third

generation" product liability suits sounding in tort.[2] Massachusetts courts have rejected "pre-

conception torts" -- where the plaintiff claims injury from tortious action to the infant's mother

occurring before his or her conception -- because of an inability to sensibly analyze the concepts

of duty, foreseeability, and causation in this context. These concerns are heightened in the

context of third generation claims where a plaintiff's claimed injury is one step further removed

---

[1] CM's mother, Jennifer Maitre, was originally a plaintiff in this litigation. On June 15, 2006, Jennifer Maitre filed a stipulation of dismissal with respect to her claims only. *See* Docket Entry No. 28.

[2] "Third generation" in the DES context refers to the alleged causal chain between a mother who ingested DES (first generation), a daughter who was exposed to DES *in utero* as a result of said ingestion (second generation), and a child born many years later to the DES-exposed daughter (third generation). Third generation DES plaintiffs were never exposed to the drug.

B3216950.2

from the tortious action -- sale of a pharmaceutical drug to the claimant's grandmother -- that allegedly caused it. Further, every appellate jurisdiction that has squarely faced third generation DES claims have rejected them, based on the same policy considerations cited by Massachusetts courts. CM's third generation claims are simply not cognizable in Massachusetts.

## DEFENDANT ELI LILLY AND COMPANY'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE[3]

1.    In the Complaint, CM, through her mother, Jennifer Maitre, alleges negligence and strict liability. Complaint ¶¶ 22 - 31 (copy attached as Exhibit 1 to Affidavit of Brian L. Henninger ("Henninger Aff.")). CM seeks compensatory and punitive damages. *Id.* at ¶ 32.

2.    CM's grandmother, Mary Susan Bane ("Ms. Bane"), became pregnant with Mrs. Maitre in February 1963 while she was living in Needham, Massachusetts and allegedly ingested DES during that pregnancy. *See id.* at ¶ 4 (Henninger Aff.) (alleging exposure in Massachusetts); Mrs. Maitre's Answers to Lilly's First Set of Interrogatories ("Interrog.") at Nos. 1, 12 (copy attached as Exhibit 2 to Henninger Aff.) (stating that the approximate date and place of Mrs. Maitre's conception). Mrs. Maitre was born in November 1963 in Boston, Massachusetts. *Id.* at No. 1.

3.    Mrs. Maitre became pregnant with CM in November 1998, more than thirty-five years after his mother's alleged exposure to diethylstilbestrol. *Id.* at No. 15(b). CM was born at 28 weeks gestation in June 1999. *Id.*

4.    CM has never been exposed to diethylstilbestrol. Complaint at ¶ 23 (Henninger Aff., Ex. 1).

---

[3] Lilly accepts these facts as undisputed for purposes of this summary judgment motion only and reserves the right to contest any of these facts at trial.

CLOSED

## United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:05-cv-10442-MBB

Maitre v. Eli Lilly and Company
Assigned to: Magistrate Judge Marianne B. Bowler
Demand: $2,000,000
Case in other court: US District Court - District of
                 Columbia, 03-02631
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 03/09/2005
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2007 | 74 | Sealed order. (Duffy, Marc) (Entered: 03/19/2007) |
| 03/16/2007 | 73 | Sealed Document. (Attachments: # (1) Attachment 1# (2) Attachment 2# (3) Attachment 3)(Abaid, Kim) (Entered: 03/19/2007) |
| 03/16/2007 | 72 | Judge Marianne B. Bowler: ORDER entered granting 69 Motion to Seal. (Duffy, Marc) (Entered: 03/16/2007) |
| 03/16/2007 |  | Case reassigned to Judge Marianne B. Bowler. Judge Joseph L. Tauro no longer assigned to the case. (Duffy, Marc) (Entered: 03/16/2007) |
| 03/16/2007 | 71 | CONSENT to Jurisdiction by US Magistrate Judge filed by Eli Lilly and Company. (Duffy, Marc) (Entered: 03/16/2007) |
| 03/16/2007 | 70 | CONSENT to Jurisdiction by US Magistrate Judge filed by Jennifer Maitre. (Duffy, Marc) (Entered: 03/16/2007) |
| 03/15/2007 | 69 | Joint MOTION to Seal *Consent Motion for Settlement Approval* by Jennifer Maitre. (Attachments: # 1 Proposed Order)(Tennyson, Erica) (Entered: 03/15/2007) |
| 01/25/2007 |  | Civil Case Terminated. (Abaid, Kim) (Entered: 01/25/2007) |
| 01/25/2007 | 68 | Judge Joseph L. Tauro : ORDER entered. SETTLEMENT ORDER OF DISMISSAL (Abaid, Kim) (Entered: 01/25/2007) |
| 01/24/2007 | 67 | REPORT of Alternative Dispute Resolution Provider. Case settled. (Duffy, Marc) (Entered: 01/24/2007) |
| 01/18/2007 |  | Judge Marianne B. Bowler: Electronic ORDER entered granting 66 Motion to Amend. (Bowler, Marianne) (Entered: 01/18/2007) |
| 01/18/2007 | 66 | Consent MOTION to Amend *Notice of Second ADR Conference* by Eli Lilly and Company. (Attachments: # 1 Text of Proposed Order) (Henninger, Brian) (Entered: 01/18/2007) |
| 10/17/2006 |  | Judge Marianne B. Bowler: Electronic ORDER entered granting 65 |

| | | |
|---|---|---|
| | | Motion to Amend. (Bowler, Marianne) (Entered: 10/17/2006) |
| 09/07/2006 | 65 | Consent MOTION to Amend 63 Notice of ADR Conference, *to Waive Personal Appearance at ADR Conference* by Eli Lilly and Company. (Attachments: # 1 Text of Proposed Order)(Henninger, Brian) (Entered: 09/07/2006) |
| 08/24/2006 | | Electronic Notice of assignment to ADR Provider. Magistrate Judge Marianne B. Bowler appointed.(Tyler, Rebecca) (Entered: 08/24/2006) |
| 08/22/2006 | 64 | Judge Joseph L. Tauro : ORDER entered. REFERRING CASE to Alternative Dispute Resolution. (Attachments: # 1 Docket Sheet)(Abaid, Kim) (Entered: 08/23/2006) |
| 08/22/2006 | | Case no longer referred to Magistrate Judge Marianne B. Bowler. (Abaid, Kim) Modified on 8/24/2006 (Abaid, Kim). (Entered: 08/23/2006) |
| 08/18/2006 | 63 | NOTICE of ADR Conference. Mediation Hearing set for 10/19/2006 at 10:00 AM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. All PARTIES are REQUIRED to attend and must have full binding settlement authority, leave of court is REQUIRED for any exceptions. All confidential mediation briefs are REQUIRED to be submitted to the court VIA FACSIMILE at (617) 204-5833 at least TWO BUSINESS DAYS prior to the hearing. (Duffy, Marc) (Entered: 08/18/2006) |
| 08/16/2006 | 62 | Judge Joseph L. Tauro : ORDER entered. REFERRING CASE to Magistrate Judge Marianne B. Bowler Referred for: Mediation(Abaid, Kim) (Entered: 08/16/2006) |
| 08/16/2006 | | Judge Joseph L. Tauro : Electronic ORDER entered granting 61 Motion to Refer Case to Magistrate Judge Bowler for Mediation (Abaid, Kim) (Entered: 08/16/2006) |
| 08/16/2006 | 61 | Joint MOTION Refer Case to Magistrate Judge *Marianne B. Bowler for Mediation* by Jennifer Maitre. (Attachments: # 1 Proposed Order) (Tennyson, Erica) (Entered: 08/16/2006) |
| 08/08/2006 | | Judge Joseph L. Tauro : Electronic ORDER entered denying 29 Motion for Summary Judgment (Abaid, Kim) (Entered: 08/09/2006) |
| 07/31/2006 | | Notice of correction to docket made by Court staff. Correction: Docket Entries 35 - 60 corrected because: Documents were not in numerical order. Replaced documents and corrected docket entry text to reflect the images attached. (Abaid, Kim) (Entered: 07/31/2006) |
| 07/28/2006 | 60 | EXHIBIT re 35 Affidavit of Aaron M. Levine by Jennifer Maitre. (Tennyson, Erica) Modified on 7/31/2006 (Abaid, Kim). *** Document was filed as part of exhibit 2, see docket entry 36 for full image of exhibit 2. *** (Entered: 07/28/2006) |
| 07/28/2006 | 59 | EXHIBIT re 35 Affidavit of Aaron M. Levine by Jennifer Maitre. (Tennyson, Erica) Modified on 7/31/2006 (Abaid, Kim). *** Document was filed as part of exhibit 2, see docket entry 36 for full image of exhibit |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
KATHARINE LAGOR, et al.                          )
                                                 )
                    Plaintiffs,                  )        CIVIL ACTION No. 06-1967 (JDB)
           v.                                    )        Next Event:
                                                 )        Deadline for Discovery Requests
ELI LILLY AND COMPANY, et al.                    )              April 22, 2007
                                                 )
                    Defendants.                  )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**(PROPOSED) ORDER**

UPON CONSIDERATION of Plaintiffs' Motion to Transfer to the District of

Masachusetts, and any Oppositions filed thereto, and for good cause shown, it is this ___ day of

_____, 2007,

**ORDERED** that Plaintiffs' motion be GRANTED and the present action transferred to

the court for the District of Massachusetts located in Boston, Massachusetts.


                                        _____
                                        The Honorable John D. Bates
                                        United States District Judge